# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANTON STORY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1241 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| JOHN E. WETZEL, DORINA VARNER, | ) | |
| KERRI MOORE, ROBIN M. LEWIS, L.S. | ) | |
| KERNS, BARR, ROBERT GILMORE, | ) | |
| TRACEY SHAWLEY, IRMA VIHLIDAL, | ) | |
| DR. BYUNGHAK JIN, CAPTAIN | ) | |
| ARMSTRONG, CAPTAIN MITCHELL, LT. | ) | |
| KELLY, LT. SILBAUGH, LT. HOWELLS, | ) | |
| LT. A.J. MORRIS, LT. GREGO, C.O. | ) | |
| JOHNSON, C.O. BARNHART, C.O. | ) | |
| SCHIRRA, SARGENT PLUMLEY, | ) | |
| SARGENT TROUT, and NURSE JANE | ) | Re: ECF Nos. 49 and 57 |
| DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Stanton Story ("Plaintiff") is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional

Institution at Greene ("SCIG"). Plaintiff initiated with civil action against DOC officials John E.

Wetzel ("Wetzel"), Dorina Varner ("Varner"), Kerri Moore ("Moore"), Robin M. Lewis

("Lewis"), L.S. Kerns Barr ("Barr"), Robert Gilmore ("Gilmore"), Tracey Shawley ("Shawley"),

Irma Vihlidal ("Vihlidal"), Captain Armstrong ("Armstrong"), Captain Mitchell ("Mitchell"),

Lt. Kelly ("Kelly"), Lt. Silbaugh ("Silbaugh"), Lt. Howells ("Howells"), Lt. A.J. Morris

("Morris"), Lt. Grego ("Grego"), C.O. Johnson ("Johnson I"), C.O. Barnhart ("Barnhart"), C.O.

Schirra ("Schirra"), Sargent Plumley ("Plumley"), Sargent Trout ("Trout") and C.O. Johnson

("Johnson II") (collectively, "the DOC Defendants"), alleging that the DOC Defendants violated his rights provided by the Constitution by placing him in a "dry cell" following a suspicious interaction that Plaintiff had with a visitor. Plaintiff has also has named Byunghak Jin, MD ("Dr. Jin") as a defendant contending that Dr. Jin violated his constitutional rights when he performed an anal probe on Plaintiff and gave Plaintiff an enema. Plaintiff alleges that Defendants' action ran afoul of the First, Eighth and Fourteenth Amendments to the United States Constitution.[1]

Presently before the Court is a Motion to Dismiss submitted on behalf of the DOC Defendants, ECF No. 49, and a separate Motion to Dismiss submitted on behalf of Dr. Jin. ECF No. 57. For the reasons that follow, the DOC's Motion will be granted in part and denied in part, and Dr. Jin's Motion will be granted in its entirety.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint and the documents that Plaintiff has submitted in conjunction with the Complaint,[2] Plaintiff was removed from the visitation room at SCIG on September 21, 2014, by Defendants Plumley, Johnson I, Barnhart and Schirra under suspicion of receiving contraband from a visitor. ECF No. 12 ¶ 27. See ECF No. 12-1 at 23. Plaintiff was taken to the restroom section of the "strip and search area" and was asked by Plumley "if [Plaintiff] had anything," which Plaintiff denied. ECF No. 12 ¶ 29. Plaintiff alleges that Schirra left the restroom and within thirty seconds announced that he had found "something." Id. ¶ 30. According to the misconduct report subsequently filed against Plaintiff, Schirra saw something

---

[1] Although Plaintiff makes reference to the Fifth, Sixth and Ninth Amendments to the Constitution in the Complaint, he has alleged no facts to support any such claims. ECF No. 12 ¶¶ 1, 61, 101.

[2] It is well established that in deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case," as well as "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994), and Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997).

fall out of Plaintiff's pant leg which was later found to be packaged marijuana. ECF No. 12-1 at 23. Plumley then allegedly threatened Plaintiff with a strip search if Plaintiff did not give him "something." ECF No. 12 ¶ 31. Plaintiff again denied having "anything" and was then taken briefly to a holding cell by Defendants Johnson I and Barnhart and ultimately taken to a "dry cell" in the infirmary by Defendant Kelly and some other unidentified corrections officers. Id. ¶¶ 29, 32-35, 39. Plaintiff alleges that there he was shackled and handcuffed to the wall for 26 hours despite his complaints that his hands and wrists were swelling and numb and that he was in "great pain." Id. ¶¶ 40-44.

On the following day, September 22, 2014, Plaintiff was taken by Defendant Kelly for an x-ray after which he was returned to the dry cell and allegedly re-shackled and handcuffed to the wall. Id. ¶¶ 45-46. Defendant Kelly allegedly told Plaintiff that he would be released only if Plaintiff submitted to an anal probe which Plaintiff agreed to have done. Id. ¶¶ 47-48. An anal probe and enema were subsequently performed by Dr. Jin in the dry cell with Kelly present. Id. ¶¶ 49-51. Plaintiff was then taken to the Restrictive Housing Unit ("RHU").

On September 24, 2014, Plaintiff was taken for another x-ray. Id. ¶¶ 52-54. On that same date, Plaintiff filed a grievance concerning alleged nerve damage to his hands stemming from being handcuffed to the wall. On October 2, 2014, November 20, 2014, and December 17, 2014, respectively, Plaintiff filed grievances against Dr. Jin regarding the anal probe, Dr. Jin's alleged refusal to prescribe medicine for a skin condition, and his failure to administer medical attention for facial pain that Plaintiff was experiencing. Id. ¶¶ 57-60.

It also appears that on September 25, 2014, Plaintiff received notice from the Program Review Committee that Plaintiff was under investigation relative to the events that transpired on September 21, 2014, in the visitors' room, and on October 1, 2014, Plaintiff was escorted from

the RHU to a misconduct hearing before Defendant Barr.  Id. ¶¶ 56, 62.  The record shows that

Plaintiff was charged with possession or use of a dangerous controlled substance; violating of the

Pennsylvania Crimes Code, *i.e.* introduction of contraband into the institution; refusing to obey

an order; possession of contraband; violating visiting regulations; lying to an employee; and

failure to report the presence of contraband.  ECF No. 12-1 at 23.  At Plaintiff's request, Barr

postponed the hearing so that she could review the camera footage of the incident in question.

ECF No. 12 ¶ 62.  The hearing was reconvened the next day, at which time Barr allegedly told

Plaintiff that she had observed Plaintiff "doing a lot of squirming around" and that she accepted

the corrections officers' accounts of the incident.  Id. ¶ 63.  According to the documents Plaintiff

has attached to his Complaint, Barr specifically found that the video showed:

> the visitor reaching into his right pants pocket and then put his hand down
> as Story puts his left hand down.  He then brings his left hand onto his lap
> with his hand cupped. Puts his right hand over the left then makes a
> scooping motion with right hand closing his right hand and then with his
> right hand closed he uses his left hand to pull his right sleeve and puts his
> right hand into his jumpsuit.  He sits up and is moving his hand around at
> the back of his body in his jumpsuit for 4 seconds. Then the officer arrives,
> HEX also viewed photos of the items taken that the inmate dropped from
> his clothing.  Balls of marijuana (total.weight 38.2 grams), plastic bag,
> electrical tape and the NIK testing packet.
>
> 10/2/14 HEX viewed the video from the holding area. HEX views the
> inmate squirming around with hand cuffs on. He is up and down off the
> bench. Finally HEX sees officer Johnson arrive and that is when the second
> ball of black tape is found.

ECF No. 12-1 at 22.  See id. at 6-7, 14.  Following the hearing, Barr found Plaintiff guilty of

possession of a controlled substance, possession of contraband, lying to an employee, and failure

to report the presence of contraband and gave Plaintiff a total of 270 days in disciplinary

confinement as a result.  Id. at 22, 24.

According to the Complaint, on October 3, 2014, Defendant Trout allegedly removed Plaintiff from his cell in the RHU to inventory Plaintiff's property that had been sent from the unit where Plaintiff had been housed previously. During the inventory, Plaintiff informed Trout and Defendant Barnhart that not all of his property was there. ECF No. 12 ¶¶ 64-65. As a result, Trout and Barnhart placed the property that was being inventoried "in the disputed property" pending an investigation. Id. ¶ 66. See ECF 12-1 at 33-35. Plaintiff's complaints that he had on-going cases in both Pennsylvania state and Federal court systems went unheeded and, as a result, Plaintiff alleges that he missed filing deadlines and his cases were "denied." ECF No. 12 ¶¶ 68-69. On October 3, 2014, Plaintiff apparently filed a grievance as well as a request to Defendant Armstrong regarding the confiscation of his property to no avail. Id. ¶¶ 70-72. It also appears that Plaintiff filed another grievance regarding the confiscation of his personal property that his former cell mate, Anthony Shaw, told Plaintiff he had given to Defendant Johnson II. Id. ¶ 75. That grievance was denied, as were Plaintiff's subsequent appeals. Id. ¶¶ 76-79.

Plaintiff submitted the instant Complaint on September 23, 2015, bringing claims against Defendants pursuant to the Due Process Clause of the Fourteenth Amendment to the Constitution relative to his being escorted from the visitors' room and taken to the dry-cell (Count I); a claim for cruel and unusual punishment under the Eighth Amendment relative to Plaintiff being handcuffed to the wall of the dry-cell for 26 hours (Count II); a Fourteenth Amendment due process claim relative to his subsequent confinement to the RHU (Count III); an Eight Amendment deliberate indifference claim against Dr. Jin (Count IV); a Fourteenth Amendment claim relative to the misconduct hearing (Count V); a First Amendment access to courts claim (Count VI); a state law conversion claim (Count VII); and a Fourteenth amendment due process

claim relative to the grievance process and a claim for intentional infliction of emotional distress (Count VIII).

The DOC Defendants filed a Motion to Dismiss and an accompanying brief on May 5, 2016, ECF Nos. 49, 50, to which Plaintiff filed a Response and accompanying brief on May 13, 2016. ECF Nos. 54, 55. Dr. Jin filed a Motion to Dismiss and an accompanying brief on June 2, 2016, ECF Nos. 57, 58, to which Plaintiff filed a Response and an accompanying brief on June 16, 2016. ECF Nos. 60, 61. As such both Motions are ripe for review.

## II.  STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir.

2008) (finding that, under <u>Twombly</u>, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

In addition, pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520–521 (1972). In a civil rights action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir. 2002), *quoting* <u>Holley v. Dep't of Veteran Affairs</u>, 165 F.3d 244, 247–48 (3d Cir. 1999). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378 (5th Cir. 2002).

## III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." <u>Kaucher v. Cty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006), *citing* <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the

plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423. As previously discussed, Plaintiff alleged that Defendants violated his rights provided by the First, Eighth and Fourteenth Amendments to the Constitution.

### A. The DOC Defendants' Motion to Dismiss

### 1. Personal Involvement

The DOC Defendants argue that Plaintiff's claims brought against Defendants Wetzel, Varner, Lewis, Gilmore, Vihlidal, Armstrong, Mitchell, Silbaugh, Moore, Barr, Shawley, Howells, Morris and Grego should be dismissed because Plaintiff has failed to set forth sufficient facts in the Complaint to show that they were personally involved in the alleged underlying constitutional violations.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir. 2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. Cty. of Bucks, 455 F.3d 418, 432 n.7 (3d Cir. 2006), *quoting* Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional

rights"). See Rode v. Dellarciprete, 845 F.2d at 1207-08 ("[a]llegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity" such as stating time, place and persons responsible").

Moreover, liability of an individual government defendant cannot be predicated on the unconstitutional conduct of his or her subordinate under a theory of *respondeat superior*. Evancho v. Fisher, 423 F.3d at 353, *quoting* Rode v. Dellarciprete, 845 F.2d at 1207. See Baraka v. McGreevey, 481 F.3d at 210 (a supervisor can only be held liable if his or her own actions resulted in the constitutional injury).

It is also well established that participating in the grievance process is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct. Rode v. Dellarciprete, 845 F.2d at 1207. See Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those Defendants in the alleged underlying unconstitutional conduct"); Jefferson v. Wolfe, No. 04-44 E, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (finding that allegations that the defendants denied the plaintiff's appeal of his grievance was insufficient to establish the defendant's personal involvement in the challenged conduct); Watkins v. Horn, No. 96-4129, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement).

Here, Plaintiff has not alleged any facts to support a finding that Defendants Wetzel, Varner, Lewis, Gilmore, Vihlidal, Armstrong, Mitchell or Silbaugh were personally involved in the alleged unconstitutional conduct at issue but rather seek to hold them liable based solely on the fact that they hold supervisory positions. ECF No. 12 ¶¶ 71, 72, 85, 88, 89, 90, 91, 92, 94.

Because these Defendants cannot be held liable for the actions of their subordinates, the claims brought against them are properly dismissed.[3]

Similarly, Plaintiff seeks to hold Defendants Moore, Barr, Shawley, Howells, Morris and Grego liable simply because they participated in reviewing the grievances and subsequent appeals filed by Plaintiff relative to the alleged underlying constitutional violations.[4] Id. ¶¶ 62, 63, 76, 79, 81, 82, 84, 86, 93. Plaintiff's failure to allege facts from which it could be inferred that these Defendants were personally involved in the alleged violations themselves, the claims brought against them are properly dismissed as well.

### 2. Due Process Claims (Counts I, III, IV, V, VI and VIII)

Plaintiff refers to the Due Process Clause of the Fourteenth Amendment in six Counts of the Complaint. Plaintiff's complaints in Counts I, III and V all revolve around the disciplinary process relative to the misconduct issued to Plaintiff after he received contraband from a visitor on September 21, 2014. Specifically, Plaintiff complains about being escorted from the visiting room and charged with the misconduct (Count I); being confined to the RHU on mere conjecture (Count III); and the manner in which Defendant Barr conducted the misconduct hearing (Count V).

It is well established that "[p]risoners ... may not be deprived of life, liberty or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). It is equally well established, however, that prison inmates are generally not entitled to procedural due process in prison disciplinary hearings since the sanctions imposed as a result of those hearings usually do

---

[3] Although the DOC's Motion to Dismiss was filed before counsel entered her appearance on behalf of Defendant Lewis, who apparently died in December of 2015, see ECF No. 6, the analysis regarding her personal involvement vis-à-vis the grievance process applies to her as well. ECF No. 12 ¶ 91.

[4] Although Defendant Barr did not participate in the grievance process, the analysis regarding personal involvement in any underlying constitutional violations is equally applicable to her as Plaintiff's claim against Barr is based solely on her role as the hearing examiner at Plaintiff's subsequent misconduct hearing.

not impinge on a protected liberty interest and that an inmate's due process rights are not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). See Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170-71 (3d Cir. 2011).

The United States Court of Appeals for the Third Circuit has specifically held that imposing a sanction of up to nine months in the RHU does not constitute an atypical and significant hardship under Sandin. Crosby v. Piazza, No. 11-1176, 2012 WL 641938, at *3-4 (3d Cir. Feb. 29, 2012) (a total of 270 days in the RHU after being found guilty of both misconducts does not constitute an atypical and significant hardship under Sandin). See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in Sandin"); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in segregation was not an atypical and significant hardship). See also Hewitt v. Helms, 459 U.S. 460, 468 (1983), *overruled on other grounds as recognized*, Mackey v. Dyke, 111 F.3d 460, 462 (6th Cir. 1997) (the Due Process Clause of the Fourteenth Amendment does not create an inherent liberty interest to remain free from administrative custody); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

In the instant case, it is clear from the documents submitted by Plaintiff in conjunction with the Complaint that, as a result of the misconduct, he received 270 days in the RHU. ECF No. 12-1 at 24. Thus, under Sandin, Plaintiff was not entitled to due process relative to the misconduct and he is unable to state a due process claim relative to the disciplinary process. Plaintiff's claims brought at Counts I, III, and V of the Complaint therefore will be dismissed.

At Count IV of the Complaint, although Plaintiff mentions the Fourteenth Amendment, his claim revolves around Dr. Jin's alleged deliberate indifference to his medical needs and does not state a due process claim against the DOC Defendants. Thus, Count IV of the Complaint is properly dismissed as to the DOC Defendants as well.

Plaintiff's claim at Count VI of the Complaint revolves around the alleged unlawful confiscation of his legal materials. The unauthorized intentional deprivation of property by a prison official, however, does not violate the Due Process Clause where the inmate has a meaningful post-deprivation remedy available to him. Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008), *quoting* Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, in order to succeed on a due process claim, an inmate must not only show that his property was confiscated but that he was not afforded a post-deprivation administrative remedy. Ball v. Campbell, No. 11-2239, 2011 WL 7080692, at *7 (M.D. Pa. Dec. 9, 2011), *Report & Recommendation adopted*, 2012 WL 201846 (M.D. Pa. Jan. 23, 2012). The United States Court of Appeals for the Third Circuit has found that adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process. Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010); Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). The existence of either of these post-deprivation remedies therefore "forecloses any due process claim . . . even if [the] inmate is dissatisfied with the result of the process." Iseley v. Horn, No. 95-5389, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996), *citing* Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995). See Pettaway v. SCI Albion, No. 11-158 E, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012).

Here, it is clear from the Complaint that Plaintiff had a post-deprivation remedy available to him and that he, in fact, took advantage of that remedy. Indeed, Plaintiff has alleged that he

filed an inmate grievance concerning the confiscation of his legal, religious and personal property on October 3, 2014. ECF No. 12 ¶ 70. As such, Plaintiff is unable to state a due process claim relative to the confiscation of his legal materials and to the extent he seeks relief under the Fourteenth Amendment, Plaintiff's claim at Count VI will be dismissed.

Finally, Count VIII of the Complaint appears to revolve around the grievance process at SCIG in general and specifically around the handling of two grievances Plaintiff filed with respect to his missing personal property and the treatment he received by Dr. Jin. Id. ¶¶ 109, 75-94. The Court of Appeals for the Third Circuit, however, has rejected due process claims relating to prison grievance procedures finding that "[p]risoners do not have a constitutional right to prison grievance procedures . . . [n]or do they have a liberty interest protected by the due process clause in the grievance procedures." Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013), citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause). As such, to the extent that Plaintiff's due process claim brought at Count VIII revolves around the prison grievance procedures, it is properly dismissed. See Rowkosky v. Burns, No. 13-174, 2013 WL 891913, at *1 (W.D. Pa. Mar. 8, 2013), quoting Morales v. Beard, No. 09–162, 2009 WL 2413425, at *2 (W.D. Pa. July 31, 2009) ("even if prison grievance system was inadequate, prisoner still had 'at least one adequate post-deprivation remedy in the form of a state law tort suit'").

### 3.    First Amendment Claim (Count VI)[5]

Plaintiff alleges at Count VI of the Complaint that his First Amendment right of access to the courts was violated when his legal materials were confiscated.

An incarcerated prisoner, like any other citizen, has a constitutionally protected right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The United States Supreme Court has established that in order to have standing to bring a claim for denial of access to the courts, an inmate must establish that he suffered an "actual injury" as a result of the alleged denial. Id. at 349. See Dunbar v. Barone, 487 F. App'x 721, 724 (3d Cir. 2012). "Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." Fortune v. Hamberger, 379 F. App'x 116, 120 (3d Cir. 2010), quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002). See Dunbar v. Barone, 487 F. App'x at 724; Atwell v. Lavan, 557 F. Supp. 2d 532, 558-59 (M.D. Pa. 2008), aff'd, 366 F. App'x 393 (3d Cir. 2010) (proof of actual injury caused by virtue of absence of records is required). Thus, in order to state a claim for denial of access, the allegedly lost suit must have been non-frivolous since losing the ability to litigate a frivolous suit simply causes no injury. Christopher v. Harbury, 536 U.S. at 415. It therefore follows that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim." Id. See id. at 416 ("[h]ence the need for care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope").

---

[5] Although Defendants indicate that Plaintiff has also brought First Amendment claims in Counts IV and V of the Complaint, as previously discussed, Count IV revolves around Dr. Jin's alleged deliberate indifference to Plaintiff's medical needs and does not state a First Amendment claim against the DOC Defendants. Further, at Count V of the Complaint, although Plaintiff generally alleges that he was denied his rights provided by the First Amendment, Count V revolves around Defendant Barr's handling of the misconduct hearing held on October 2, 2014, and does not implicate Plaintiff's First Amendment rights.

In this case, to support his First Amendment claim that he was denied access to the courts Plaintiff alleges only that he informed Defendant Trout that he had "open cases in Federal and State Court" and that the failure to return his legal documents caused him to miss important deadlines which, in turn, caused "litigations in both state and federal court to be denied." ECF No. 12 ¶¶ 67-69, 106. These assertions fall woefully short of describing the underlying causes of action or demonstrating that Plaintiff suffered an actual injury. Plaintiff has not identified any particular litigation, the issues raised therein or any facts that would suggest that his cases had any merit.

Further, the documents that Plaintiff has attached to the Complaint to support his First Amendment claim do not demonstrate that any filing deadlines were missed. The orders from the Supreme Court and Superior Court of Pennsylvania show only that Plaintiff had an appeal from the denial of a PCRA petition pending in the Superior Court of Pennsylvania in March and April of 2014, and that his subsequent Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied in January of 2015. ECF No. 12-1 at 41-44. With respect to the order from the Third Circuit Court of Appeals dated July 1, 2015, in which Plaintiff's application for a certificate of appealability in a habeas proceeding was denied, the record shows that Plaintiff's Motion to Amend/Correct Petition for Writ of Habeas Corpus, which is the subject of the Order at issue, was denied by the District Court on September 30, 2014, and Plaintiff's Notice of appeal to the Third Circuit Court of Appeals was filed on October 27, 2014.[6] Thus, contrary to Plaintiff's suggestion, the appeal and/or request for a certificate of appealability was timely

---

[6] A court may take judicial notice of matters of public record including prior judicial proceedings. In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig., 172 F. Supp. 3d 724, 738 (D.N.J. 2016), *citing* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007), Buck v. Hampton Tp. School Dist., 452 F.3d 256, 260 (3d Cir. 2006), and McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009).

filed.[7]  In short, there is absolutely no indication in any of these records to suggest that any of Plaintiff's cases were dismissed because he missed deadlines as the result of his property being confiscated.  Under these circumstances, Plaintiff's First Amendment claim brought at Count VI of the Complaint is properly dismissed.[8]

---

[7] Although the Order from the Third Circuit Court of Appeals submitted by Plaintiff makes reference to the timely filing of a notice of appeal and the propriety of equitable tolling, the appeal to which it refers was that of a habeas petition that Plaintiff filed in 1992, which was docketed at C.A. No. 92-0281, and ultimately denied by this Court on March 31, 1997.  See C.A. 2:99-cv-2012, ECF No. 50 at 3-6.  Counsel for Plaintiff failed to timely appeal the denial of relief and this Court denied counsel's subsequent requests for an extension of time to file a notice of appeal.  Plaintiff then filed a second petition, on November 1, 1999, which was docketed at C.A. No. 99-2102, challenging the effectiveness of the representation he received relative to the first petition due to counsel's failure to timely appeal.  Id.  On November 1, 2013, over ten years after the second petition was denied and the appeal was upheld by the Court of Appeals, Plaintiff filed a Motion to Amend/Correct the Petition, in which he sought, at least in part, to revisit this Court's Order issued in 1997 denying his counsel's request for an extension of time to file a notice of appeal from the denial of Plaintiff's first habeas petition.  Id.  In reviewing the District Court's Order denying Plaintiff's Motion to Amend as a successive petition, which was issued on September 30, 2014, the Court of Appeals for the Third Circuit rejected Plaintiff's argument that the District Court should have equitably tolled the time to appeal Plaintiff's first habeas petition, noting that the timely filing of a notice of appeal is a jurisdictional requirement and not subject to equitable exceptions.  Id. at ECF No. 54.  It is this Order which Plaintiff has attached to the instant Complaint which clearly does not support Plaintiff's assertion that he missed deadlines in Federal Court because his property was confiscated in 2014.

[8] The Court notes here that Plaintiff also references the Equal Protection Clause of the Fourteenth Amendment in Counts III, VI and VIII of the Complaint.  Plaintiff, however, has not alleged any facts regarding other similarly situated individuals that were treated more favorably than Plaintiff was treated.  Plaintiff therefore has failed to state an equal protection claim and to the extent Plaintiff intended to do so those claims are properly dismissed as well.  See Parran v. Wetzel, No. 14-1522, 2016 WL 1162328, at *9 (M.D. Pa. Mar. 23, 2016), citing Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 423–24 (3d Cir. 2000) ("[t]o state an equal protection claim, Parran must allege (1) that he is a protected class member and (2) that he was treated differently from similarly situated persons outside his protected class").  Further, although Plaintiff alleges at Counts III, IV, V, VI, VII and VIII of the Complaint that Defendants' actions ran afoul of DOC Policy, he has failed to state a claim.  Not only is there no independent state law cause of action for violating DOC policy but, to the extent Plaintiff offers his assertions to support his constitutional claims, it is clear that "a violation of an internal policy does not automatically rise to the level of a constitutional violation." Atwell v. Lavan, 557 F. Supp. 2d at 556 n.24, citing Whitcraft v. Twp. of Cherry Hill, 974 F. Supp. 392, 398 (D.N.J. 1996); Daniels v. Williams, 474 U.S. 327, 332–33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505–506 (E.D. Pa. 1993), aff'd, 22 F.3d 301 (3d Cir. 1994).  Thus, it is incumbent on a plaintiff making such a claim to plead facts suggesting that the alleged policy violations in his or her particular case rose to the level of a constitutional violation.  Here, Plaintiff has not alleged any such facts.  Accordingly, Plaintiff's claims revolving around DOC policy violations will be dismissed.

## 4.  State Law Claim - Conversion (Count VII)[9]

Defendants argue that Plaintiff's state law claim for conversion should be dismissed because there is no indication that Defendants permanently dispossessed Plaintiff of his property. In so arguing, Defendants rely on Ickes v. Grassmeyer, 30 F. Supp. 3d 375 (W.D. Pa. 2014), in which the Court stated:

> [a]n individual commits the tort of trespass to chattels by intentionally dispossessing another person of a chattel or intermeddling with a chattel in another person's possession. *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 708 (Pa. Super. Ct.2005). If the interference with the owner's right of possession is sufficiently severe to permanently deprive him or her of that right, the trespass culminates in a conversion. *Baram v. Farugia*, 606 F.2d 42, 43–44 (3d Cir. 1979). A conversion can occur even if the defendant does not appropriate the property for his or her own use. *Central Transport, LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 218–19 (E.D. Pa. 2012).

Id. at 402.

---

[9] Although at Count II of the Complaint Plaintiff alleges that Defendants violated his right "to be free from cruel and unusual punishment with deliberate indifference and *negligence,*" it is clear that Plaintiff is not bringing a state law claim for negligence but seeks to hold Defendants liable under Section 1983 for their alleged negligent conduct. It is equally clear, however, that negligence cannot support a Section 1983 claim.  See Davidson v. Cannon, 474 U.S. 344, 347 (1986) (negligence cannot support a § 1983 cause of action); Stankowski v. Farley, 487 F. Supp. 2d 543, 565 (M.D. Pa. 2007) ("…negligence is not a basis for a § 1983 action.  It is well-settled that mere negligence is not an actionable § 1983 claim").  Further, at Count IV of the Complaint Plaintiff alleges that the actions of Defendants denied Plaintiff his rights under Pennsylvania law and "clearly shows . . . negligence."  ECF No. 12 ¶ 101.  The actions upon which Plaintiff basis his claim at Count IV, however, revolve around Dr. Jin's alleged failure to provide medical treatment and not the DOC Defendants.  Id. ¶¶ 58-60, 101.  Thus, Plaintiff has failed to state a claim of negligence under state law against the DOC Defendants.  Daniels v. Williams, 474 U.S. 327 (1986).  Finally, although not addressed by the DOC Defendants, the Court notes that, to the extent Plaintiff has brought a claim for intentional infliction of emotional distress at Count VIII of the Complaint, and even assuming that Plaintiff is able to establish an Eight Amendment cruel and unusual punishment claim relative to his being handcuffed to a wall for twenty-six hours, the Court finds that, under the circumstances of this case, such actions do not rise to  the level of extreme and outrageous conduct required to sustain an IIED claim. See Hill v. City Of Philadelphia, 331 F. App'x 138, 143 (3d Cir. 2009), *citing* Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) ("in order to recover for IIED, defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society"). See also Whiting v. Bonazza, No. 09-1113, 2011 WL 500797, at *14 (W.D. Pa. Feb. 10, 2011) ("[c]onduct deemed sufficiently outrageous in Pennsylvania to constitute IIED includes:(1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease").  Thus, the only state law claim at issue is that of conversion.

Here, as Defendants correctly point out, the confiscation slips that Plaintiff has submitted to support his claims shows that Plaintiff's property was merely being held because the content was "disputed" by Plaintiff. ECF No. 12-1 at 33-35. Moreover, Plaintiff has alleged in the Complaint that Defendant Trout told Plaintiff that his property would be placed in the "disputed property" until the issue was resolved. ECF No. 12 ¶ 68. Although the Court agrees that there is no indication in the record that Defendants permanently dispossessed Plaintiff of his property, and the evidence cited above suggests that Plaintiff's property would eventually be returned to him, there is also no indication that it actually was returned to him. Indeed, the confiscation slips are dated October 3, 2014. The instant Complaint in which Plaintiff complains that his property was still being held was filed on September 23, 2015 -- almost one year later. Id. ¶ 72. Under these circumstances, the Court cannot find, at least not at this early juncture, that Plaintiff has failed to state a claim for conversion and the DOC Defendants' Motion as to Count VII will be denied.[10]

## B.  Dr. Jin's Motion to Dismiss[11]

### 1.  Count II

At Count II of the Complaint Plaintiff alleges that Dr. Jin's actions in performing a painful anal probe and enema on Plaintiff violated his rights to be free from cruel and unusual

---

[10] Although Defendants make the alternative argument that the Court should decline to exercise supplemental jurisdiction over Plaintiff state law conversion claim, the Court may only decline to exercise supplemental jurisdiction over pendent state law claims where all of the claims over which the Court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). Defendants, however, have not sought dismissal over Plaintiff's Eighth Amendment claims revolving around his being handcuffed to a wall for 26 hours and thus at least one claim over which this Court has original jurisdiction remains for adjudication. ECF No. 50 p. 1 n.1.

[11] Although Plaintiff refers generally to "Defendants" in all of his eight causes of action, the only specific allegations against Dr. Jin appear in paragraphs 49-51 and 58-60 of the Complaint which provide the basis for Plaintiff's claims brought at Counts II and IV. The Court therefore finds that only Counts II and IV pertain to Dr. Jin and has only addressed Dr. Jin's arguments in his Motion to Dismiss that pertain to those Counts.

punishment and deliberate indifference as provided by the Eight Amendment to the Constitution.

ECF No. 12 ¶¶ 97-98, 49-51.

> The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737... (2002) (citations omitted). Only "calculated harassment" or "maliciously motivated" conduct that is unrelated to institutional security is considered unconstitutional. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).... *Del Raine v. Williford]*, 32 F.3d [1024,] 1039-42 [(7ᵗʰ Cir. 1994)] (upholding reasonableness of digital rectal search against Eighth Amendment challenge because there was no evidence that officials undertook search in "malicious and sadistic fashion for the very purpose of causing harm") (citations omitted).

Green v. Hallam, 105 F. App'x 858, 862 (7ᵗʰ Cir. 2004). See Wiley v. Serrano, 37 F. App'x 252, 254 (9ᵗʰ Cir. 2002), *quoting* Wilson v. Seiter, 501 U.S. 294, 302-03 (1991) ("[t]o establish an Eighth Amendment violation, an inmate must show either that (1) prison officials inflicted pain on an inmate 'maliciously and sadistically for the very purpose of causing harm,' or (2) prison officials were deliberately indifferent to inadequate conditions of confinement"); Del Raine v. Williford, 32 F.3d 1024, 1040 (7th Cir. 1994) ("[a]n Eighth Amendment application ... requires this court to focus on the words "abusive" and "reasonable." .... *Abusiveness* occurs when there is evidence of some palpable malevolence attributable to a prison official exacerbated by the lack of a justifiable penological objective for the search") (emphasis in original); Miller v. Trometter, No. 11-811, 2012 WL 5933015, at *15 (M.D. Pa. Nov. 27, 2012) (the Eight Amendment applies when the strip search is conducted in a physically abusive manner); Sanchez v. Pereira-Castillo, 573 F. Supp. 2d 474, 485–86 (D.P.R. 2008), *aff'd in part, vacated in part on other grounds,* 590 F.3d 31 (1st Cir. 2009), *quoting* Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("searches do not violate the Eighth Amendment as long as they are conducted in a reasonable manner.  However, if such searches are done 'maliciously and sadistically for the very purpose of causing harm'

they violate the Eighth Amendment"); Payton v. Vaughn, 798 F. Supp. 258, 261 (E.D. Pa. 1992) ("to establish that prison conditions violate the eighth amendment, a plaintiff must allege facts showing that such conditions result in the wanton and unnecessary infliction of pain, or are grossly disproportionate to the severity of the crime warranting punishment").

Moreover, it is well established that "[p]reventing drugs and weapons that can be smuggled through the alimentary canal or hidden in the rectal cavity is a legitimate penological concern[, and that] [d]igital rectal searches are a legitimate means of maintaining order and do not violate the Eighth Amendment as long as they are conducted in a reasonable manner." Green v. Hallam, 105 F. App'x at 862, *citing* Bell v Wolfish, 441 U.S. 520, 559 (1979); Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995). See Sanchez v. Pereira-Castillo, 573 F. Supp. 2d at 485–86.

In the instant case, the Complaint is completely devoid of any suggestion that Dr. Jin conducted the anal probe or enema in a physically abusive manner or with excessive force; that Dr. Jin was maliciously motivated; that his actions were calculated to harass Plaintiff; or that he acted in order to cause Plaintiff harm. Although Plaintiff alleges that the probe was painful and humiliating, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Williamson v. Garman, No. 15-1797, 2016 WL 3566967, at *6 (M.D. Pa. June 29, 2016), *quoting* Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Further, "[e]mbarrassment alone because of casual observances by others does not offend the constitution." Payton v. Vaughn, 798 F. Supp. at 262. See Millhouse v. Arbasak, 373 F. App'x 135, 137 (3d Cir. 2010) (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution"); Brown v. Blaine, 185 F.

App'x 166, 170 (3d Cir. 2006) ("[w]hile we recognize that Brown may have suffered embarrassment and humiliation while the search was being conducted, we cannot conclude that Brown's constitutional rights were violated by the search procedures employed"); Williamson v. Garman, 2016 WL 3566967, at *5 ("Plaintiff's allegation that the search was degrading and embarrassing fails to state a constitutional violation").  Thus, neither the discomfort that accompanies the performance of an anal probe nor the humiliation Plaintiff suffered as a consequence give rise to an Eighth Amendment claim.  Because Plaintiff has failed to allege facts that Dr. Jin's digital probe was conducted in an unreasonable manner, he has failed to state an Eight Amendment claim against Dr. Jin at Count II of the Complaint.  See Lim v. Cruz, No. 14-108, 2015 WL 1185982, at *7 (M.D. Pa. Mar. 13, 2015) ("[a]s the complaint does not allege that Defendants conducted the search in a physically abusive fashion or with excessive force, Plaintiff has failed to state an Eighth Amendment claim for relief").  See also Del Raine v. Williford, 32 F.3d at 1039-42 (upholding reasonableness of a digital rectal search against Eighth Amendment challenge because there was no evidence that officials undertook search in malicious and sadistic fashion for the purpose of causing harm").

In addition, although Plaintiff has not alleged at Count II of the Complaint that Dr. Jin's actions ran afoul of the Fourth Amendment, even if he had, the claim would be equally unavailing as Plaintiff has not alleged any facts to show that the search was unreasonable.[12]

> There is no doubt that digital rectal examinations entail an intrusion greater than the "severe if not gross interference with a person's privacy that occurs when guards conduct a *visual* inspection of body cavities." *Bonitz [v. Fair],* 804 F.2d [164,] 172 [1st Cir. 1986](quotation omitted). At a

---

[12] See Miller v. Trometter, 2012 WL 5933015, at *15 (when a pro se plaintiff frames his claim in terms of one particular constitutional Amendment, the court should not limit his allegations to a theory of recovery under that Amendment when another Amendment applies); Allen v. Warden of Dauphin Cty. Jail, No. 07-1720, 2008 WL 4452662 , at *1 n.6 (M.D. Pa. Sept. 29, 2008), *citing* Smith v. Johnson, 202 F. App'x 547, 549 (3d Cir. 2006) ("the court is obligated to construe [a pro se inmate's] complaint liberally and to 'apply the relevant law, regardless of whether the pro se litigant has identified it by name'").

> minimum, they are "highly intrusive and humiliating." *Tribble v. Gardner,*
> 860 F.2d 321, 324 (9th Cir. 1988). Nevertheless physical rectal
> examinations of prisoners, when carried out by trained medical staff under
> sanitary conditions, are at times "a necessary and reasonable concomitance
> of ... imprisonment." *Daughtery v. Harris,* 476 F.2d 292, 295 (10th Cir.
> 1973).

Sanchez v. Pereira-Castillo, 590 F.3d 31, 42–44 (1st Cir. 2009). Indeed, as this Court

has recently stated:

> Although strip searches constitute a "significant intrusion on an individual's
> privacy," *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008),
> where officials conduct such searches in a *reasonable manner* to maintain
> security and to prevent the introduction of contraband or weapons in the
> facility, strip searches do not violate the Fourth Amendment. *See Florence
> v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309–11
> (3d Cir. 2010), *aff'd*,—U.S., 132 S. Ct. 1510, 1516–17 (2012) (emphasis
> added). The relevant test for ascertaining the reasonableness of a search
> "requires a balancing of the need for the particular search against the
> invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S.
> 520, 559 (1979). In applying this balancing test, the Court "must consider
> the scope of the particular intrusion, the manner in which it is conducted,
> the justification for initiating it, and the place in which it is conducted."
> *Bell*, 441 U.S. at 559.

Hughes v. Harper, No. 14-00585, 2015 WL 7428493, at *5 (W.D. Pa. Oct. 2, 2015), *Report &*

*Recommendation adopted*, 2015 WL 7444642 (W.D. Pa. Nov. 23, 2015). See also Green v.

Hallam, 105 F. App'x at 861 ("[p]rison officials are in the best position to determine what is

required to manage prisons, and therefore they are afforded wide-ranging deference in evaluating

what is necessary to preserve order and discipline") (internal quotations omitted).

Here, it is clear from the Complaint and the documents attached thereto that the search

was conducted by Dr. Jin for the legitimate penological purpose of locating and removing

contraband and was conducted in a cell in the prison infirmary by a medical professional with

only Defendant Kelly present. ECF No. 12 ¶¶ 39, 46, 49-50, 58. This, coupled with the Court's

earlier finding that the Complaint is devoid of any indication that Dr. Jin conducted the search in

an unreasonable manner, Plaintiff has failed to allege facts to support a plausible Fourth Amendment claim against Dr. Jin at Count II of the Complaint. See Sanchez v. Pereira-Castillo, 590 F.3d at 42–44 (We conclude that the rectal searches of plaintiff described in the complaint, carried out by medical professionals in the relatively private, sanitary environment of a hospital, upon suspicion that plaintiff had contraband in his rectum, and with no abusive or humiliating conduct on the part of the law enforcement officers or the doctors, were not unreasonable"); Williamson v. Garman, 2016 WL 3566967, at *5 (finding no constitutional violation had been alleged where the plaintiff asserted that seven corrections officers held him down, cut off his clothes, placed him on his stomach, and one officer grabbed his buttock and spread his butt cheeks apart"). As such, Count II of the Complaint will be dismissed as to Dr. Jin.

### 2. Count IV

At Count IV of the Complaint Plaintiff brings a claim against Dr. Jin alone for deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges that in November of 2014, Dr. Jin charged him for a sick call visit but refused to prescribe anything to Plaintiff for his skin condition. Plaintiff also alleges that in December of 2014 Dr. Jin charged him a fee but refused to administer medical attention for pain that Plaintiff was experiencing around the right side of his nose and nostril area. ECF No. 12 ¶¶ 101, 59-60. See ECF No. 12-1 at 19-21.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate:

(1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Moreover, it is well established that an inmate is not entitled to a particular course of treatment or to have particular tests performed. Jetter v. Beard, 130 F. App'x 523, 526 (3d Cir. 2005) (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action); Pilkey v. Lappin, No. 05-5314, 2006 WL 1797756, at *2 (D.N.J. June 26, 2006) ("refusal to consider inmate's self-diagnoses," or "to perform tests or procedures that the inmate desires" does not amount to cruel and unusual punishment). Rather, "the question of whether certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" and does not give rise to an Eighth Amendment violation. McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998), quoting Estelle v. Gamble, 429 U.S. at107. See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Maqbool v. Univ. Hosp. of Med. & Dentistry of N.J., No. 11-4592,

2012 WL 2374689, at *9 (D.N.J. June 13, 2012) (the refusal to perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction, however, does not amount to cruel and unusual punishment).

Furthermore, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising this judgment in the diagnosis and treatment of inmate patients and that Court's should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which remains a question of sound professional judgment." Carter v. Smith, 483 F. App'x 705, 707 (3d Cir. 2012), *quoting* Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citation omitted).

With respect to his first claim against Dr. Jin, Plaintiff has not pled any fact in the Complaint to suggest he suffers from a serious medical condition or that Dr. Jin was aware of facts from which it could be inferred that a substantial risk of harm existed. Plaintiff has merely alleged that he suffered from some unidentified skin condition. Moreover, the documents that Plaintiff has submitted to support his claim, *i.e.*, the grievance he subsequently filed against Dr. Jin and the initial review response, show that the skin condition of which Plaintiff complained was merely "dry skin." ECF No. 12-1 at 20. Dr. Jin, however, found no evidence of significantly dry skin and thus found there was no medical reason to prescribe lotion. Dr. Jin therefore informed Plaintiff he could buy moisturizer from commissary. Id. At best, these facts show that Plaintiff simply disagreed with Dr. Jin's assessment of a non-serious medical need which fails to state an Eighth Amendment deliberate indifference claim.

In addition, it is not at all clear that suffering from facial pain, as Plaintiff claims he was experiencing when he saw Dr. Jin in December of 2014, could be considered a serious medical

need. Plaintiff has alleged no facts concerning the onset of the pain, the extent of the pain or the duration of the pain. Nor has he alleged any facts from which the inference could be made that a substantial risk of harm existed, that Dr. Jin was aware of those facts, or that Dr. Jin actually drew the inference. Indeed, Plaintiff has not alleged that he suffered any harm as the result of Dr. Jin's alleged inaction. Plaintiff therefore has failed to state an Eighth Amendment deliberate indifference claim relative to his second visit with Dr. Jin as well.

Moreover, to the extent that Plaintiff suggests that Dr. Jin's conduct ran afoul of the Eighth Amendment because he charged Plaintiff for the sick call visits, his claim also fails. The Court of Appeals for the Third Circuit has specifically held that "[i]f a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'" Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997), quoting Helling v. McKinney, 509 U.S. 25, 32 (1993). See Stankowski v. Farley, 487 F. Supp. 2d at 556. Moreover, as the Facility Grievance Coordinator explained to Plaintiff, it appears that "Dr. Jin was required per DC-ADM 20 Section 2(A)(4) to have [Plaintiff] sign the cash slip," and that Plaintiff was appropriately charged for the sick call visits. ECF No. 12-1 at 20.

Finally, to the extent that Plaintiff has brought a retaliation claim against Dr. Jin at Count IV of the Complaint, he has also failed to state a claim. To prevail on a retaliation claim, a plaintiff must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (the constitutionally protected conduct must be "a substantial or motivating factor" in the decision to discipline the inmate).

In this case, Plaintiff has not specifically identified what protected activity he engaged in or what actions Dr. Jin took that were retaliatory.  Insofar as it can be inferred from the Complaint that Dr. Jin retaliated against Plaintiff by refusing to treat his facial pain in December of 2014, because Plaintiff had filed a grievance against Dr. Jin the month before, it is not at all clear that failing to administer treatment that Plaintiff believes he should have received for "pain" around his nose area constitutes an adverse action for purposes of a First Amendment retaliation claim in the prison context.  See Dunbar v. Barone, 487 F. App'x at 723, *citing* Mitchell v. Horn, 318 F.3d at 530 (actions deemed sufficiently adverse to sustain such a claim in the prison context are those such as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to an institution whose distance made regular family visits impossible; suffering some sort of financial penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs).

Moreover, although temporal proximity can serve to establish a causal connection between the protected conduct and the adverse action, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation.  See Killen v. Nw. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation).  See also Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.6 (3d Cir. 2000) (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Fischer v. Transue, No. 04-2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug.

22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation).

Here, Plaintiff filed two grievances against Dr. Jin on October 2, 2014, and November 20, 2014. ECF No. 12-1 at 19. It was not until December 16, 2014, almost four weeks later, that Dr. Jin allegedly declined to treat Plaintiff for his facial pain. Id. at 21. The proximity between the two events is not such that the filing of Plaintiff's grievance can be said to be a substantial or motivating factor in Dr. Jin's alleged decision not to provide Plaintiff with treatment. As such, Plaintiff has failed to state a claim against Dr. Jin at Count IV of the Complaint and it is properly dismissed.

## IV.  CONCLUSION

For the foregoing reasons, the DOC's Motion to Dismiss is properly granted in part and denied in part, and Dr. Jin's Motion is properly granted in its entirety. The United States Court of Appeals for the Third Circuit, however, has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so unless to allow an amended complaint would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, the Court finds that it would be futile to allow Plaintiff to amend his Complaint except as to his

Eighth Amendment deliberate indifference claim brought against Dr. Jin at Count IV and his First Amendment access to courts claim brought at Count VI. Accordingly the following Order is entered:

## ORDER

AND NOW, this 28th day of November, 2016, upon consideration of the Motion to Dismiss submitted on behalf of the DOC Defendants, ECF No. 49, and the Motion to Dismiss submitted on behalf of Dr. Jin, ECF No. 57, IT IS HEREBY ORDERED that DOC's Motion to Dismiss is granted in part and denied in part. The DOC's Motion is denied with respect to Plaintiff's state law claim for conversion and granted in all other respects. IT IS FURTHER ORDERED that Dr. Jin's Motion to Dismiss is granted in its entirety.[13] IT IS FINALLY ORDERED that, to the extent that Plaintiff believes he can cure the substantial pleading deficiencies identified in the Opinion as to his Eighth Amendment deliberate indifference claim brought against Dr. Jin at Count IV and his First Amendment access to courts claim at Count VI, he may file an Amended Complaint solely as to those two claims by December 19, 2016.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     Stanton Story
        AP-3330
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record via CM/ECF

---

[13] Accordingly, the only claims remaining for adjudication should Plaintiff decline to file an Amended Complaint are Plaintiff's Eighth Amendment cruel and unusual punishment claims brought at Count IV against Defendants Kelly, Johnson I, Barnhart and Schirra relative to Plaintiff being handcuffed to a wall for 26 hours and his state law claim for conversion brought against Defendants Plumley, Trout and Johnson II brought at Count VII.