IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANTON STORY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 15-1241 |
| ) | Chief Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | |
| JOHN E. WETZEL, DORINA VARNER, ) | |
| KERRI MOORE, ROBIN M. LEWIS, L.S. ) | |
| KERNS, BARR, ROBERT GILMORE, ) | |
| TRACEY SHAWLEY, IRMA VIHLIDAL, ) | |
| DR. BYUNGHAK JIN, CAPTAIN ) | |
| ARMSTRONG, CAPTAIN MITCHELL, LT. ) | |
| KELLY, LT. SILBAUGH, LT. HOWELLS, ) | |
| LT. A.J. MORRIS, LT. GREGO, C.O. ) | |
| JOHNSON, C.O. BARNHART, C.O. ) | Re: ECF Nos. 133, 142, and 147 |
| SCHIRRA, SARGENT PLUMLEY, ) | |
| SARGENT TROUT, and NURSE V. ) | |
| GRABOWSKI, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Stanton Story ("Plaintiff"), proceeding *pro se*, is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Greene ("SCI-Greene"). Pending before the Court are Plaintiff's Motion for Partial Summary Judgment, ECF No. 133; as well as Motions for Summary Judgment filed on behalf of Defendants Nurse V. Grabowski, Corrections Officers Barnhart, Johnson-I [1], Johnson-II, Kelly, Plumley, Schirra, and Trout, ECF No. 142; and Defendant Dr. B. Jin, ECF No. 147. For the reasons that follow, the

---

[1] Plaintiff has sued two SCI-Greene Corrections Officers who share the Johnson surname. For ease of reference, and to reduce confusion as to the claims asserted against them, the officers are identified as "CO Johnson-I" and "CO Johnson-II".

1

Court grants the Motions for Summary Judgment filed on behalf of all Defendants, ECF Nos. 142 and 147, and denies the Plaintiff's Motion for Partial Summary Judgment, ECF No. 133.

## I. RELEVANT FACTUAL BACKGROUND

Plaintiff initiated this civil action against various DOC officials and employees at SCI-Greene ("the DOC Defendants"), alleging that they violated his rights under the United States Constitution by shackling him to the wall of a dry cell for twenty-six hours and by confiscating his legal and personal property. Plaintiff also has named Byunghak Jin, MD ("Dr. Jin") as a defendant, contending that Dr. Jin violated his constitutional rights when he performed an anal probe on Plaintiff and by failing to treat him for a skin condition and facial and nose pain that Plaintiff was experiencing. ECF No. 12.

Plaintiff's claims arise out of an incident that occurred in a Visitor Room at SCI-Greene on September 21, 2014, during Plaintiff's visit with Edgar Williams. Defendants present video evidence of the visit which plainly depicts the transfer of contraband from Mr. Williams to Plaintiff, and Plaintiff's attempt to conceal items received in his rectal area. ECF No. 144-3. Specifically, Mr. Williams is seen retrieving items from his pants pocket and placing them in Plaintiff's hand. Id. Plaintiff casually slips the items from his left hand to his right hand and then places his right arm through the sleeve of his prison jumpsuit to reach inside. With his entire arm inside the jumpsuit, Plaintiff reaches his hand to his backside and manipulates his hand in the vicinity of his buttocks. After several abrupt movements shifting his body from left to right and back again, Plaintiff observes Defendant Corrections Officer ("CO") Plumley enter the Visitor Room and approach from his right. Plaintiff pulls his hand out of the jumper and after a few seconds, rises to a standing position and walks out of camera range with CO Plumley. Id.

2

Based upon the incident reports and statements prepared later that day, it appears CO Plumley escorted Plaintiff to a Visiting Strip Room with Defendants CO Johnson-I and CO Barnhart so that any contraband concealed by Plaintiff could be retrieved. ECF No. 144-2. As they walked past Defendant CO Schirra's desk, a black ball fell out of Plaintiff's pant leg. Id. at 17, 24-27. The ball was recovered by the search team, and Plaintiff was secured with handcuffs and placed into a secure holding room. The ball was examined and testing revealed that it contained 18.9 grams of marijuana. CO Johnson-I asked Plaintiff if he was in possession of any other contraband, and Plaintiff denied having more. This response was belied immediately by the presence of a second ball rolling out of Plaintiff's pant leg. Id. at 13. This ball was also examined and tested, and was revealed to contain an additional 19.7 grams of marijuana. At this point, COs Plumley, Barnhart and Johnson-I escorted Plaintiff to an observation cell, and secured Plaintiff under "dry cell procedures" with no access to a sink or toilet to prevent disposal of any additional contraband. Id. at 21. Plaintiff was permitted to sit or lie on a bunk, with one hand handcuffed to the wall. ECF No. 144-5 at 1. Pennsylvania State Police were contacted and Mr. Williams was placed under arrest. ECF No. 144-2 at 9, 15

Plaintiff's medical records show that over the course of the next 26 hours, Plaintiff was examined by medical staff, including Defendant Nurse Grabowski ("Nurse Grabowski"), approximately every two hours. Nurse Grabowski switched Plaintiff's handcuff to his free hand at each check to alleviate any discomfort. ECF No. 144-5 at 1-4. Once re-cuffed, Nurse Grabowksi checked Plaintiff's restrained hand to ensure adequate circulation and pulse. She also assisted Plaintiff with a bedside commode, and his urine was strained and monitored for possible drug residue. The next morning, at approximately 8:15 am, Plaintiff complained of pain in his right wrist. Both hands were examined, no edema or discoloration was noted, and normal

3

pulses were identified. Id. at 3. Plaintiff was examined by Dr. Jin at approximately 11:00 a.m., and x-rays revealed a "few round ... opaque masses" of different sizes, and round shadows at mid-pelvis. Because the x-ray was inconclusive as to the presence of additional contraband in Plaintiff's rectum, Plaintiff was offered and consented to a rectal exam and enema. No additional contraband was located, and Plaintiff was transferred to the Restricted Housing Unit ("RHU"). Id. at 4. On September 24, 2014, Dr. Jin received a second x-ray report indicating that there was no evidence of irregularities in Plaintiff's pelvis. Id. Two days later, Plaintiff was examined at sick call, complaining of pain and nerve damage to both hands, stating that it was difficult to hold a pen. Id. Plaintiff was assessed as suffering with degenerative joints, wrist and fingers, and provided Tylenol and an analgesic. Id.

Plaintiff was charged with misconduct related to the incident, and subsequently found guilty of possession of a controlled substance; possession of contraband; lying to an employee; and failure to report the presence of contraband. ECF No. 12-1 at 22-24. In reaching a decision, the Hearing Examiner determined that the overwhelming evidence, including the Visitor Room video and Defendant Plumley's written report, establish that Plaintiff was guilty of the offenses and that he lied when he denied receiving contraband from Mr. Williams.[2] The Hearing Examiner sanctioned Plaintiff with confinement to disciplinary custody in the Restricted Housing Unit ("RHU") for a total of 270 days. Id.

---

[2] Plaintiff repeatedly argues that he was found not guilty of any offense related to the receipt of contraband in the Visitor Room. See e.g. ECF No. 154 ¶ 1. However, Plaintiff misrepresents or, at best, ignores the clear finding of the Hearing Examiner: "HEX believes the written report of COI Plumley and the overwhelming evidence of the video footage over Story's denial that Story was in possession of contraband, possession of a controlled substance, did lie to an employee and did fail to report the presence of contraband ...." ECF No. 154-19. Accordingly, Plaintiff was found guilty of four of the most serious charges related to possession of a controlled substance and contraband. A lesser charge, No. 37, "Violating of visiting regulations" was dismissed without prejudice, as was a similarly redundant charge of violating the Pennsylvania Criminal Code. Id.

4

In the course of Plaintiff's confinement in the RHU, his property was removed from his former cell and placed into storage. Plaintiff alleges a state law claim for conversion arising out of the failure of Defendants Trout and Johnson-II to return or account for some of the property displaced during Plaintiff's move to the RHU, including legal materials, religious and personal property.

Through this action, Plaintiff also seeks recovery of damages against Defendant Dr. Jin for the alleged failure to treat facial pain experienced by Plaintiff beginning in December 2014. Plaintiff alleges that suffered an infectious oral abscess, which ultimately required Plaintiff to undergo root canal surgery. ECF No. 71 at 4 – 7. Plaintiff alleges that over the next ten months, Dr. Jin refused to provide medical care despite Plaintiff's suffering and pain. Plaintiff states that once he was released from the RHU, a second physician immediately referred Plaintiff to a dentist and Plaintiff was able to receive necessary treatment. Id.

Defendants have produced Plaintiff's medical records which, contrary to Plaintiff's assertions, show that Dr. Jin examined Plaintiff on December 16, 2014, for a "sinus problem" and determined that Plaintiff had tenderness in his upper right lip area. An oral examination found additional tenderness, but no swelling of gums. Dr. Jin referred Plaintiff to the dentist for an evaluation. ECF No. 150-2 at 2-3. Plaintiff's dental records have also been provided, and confirm that he was referred for a dental examination after his medical examination. On December 19, 2014, Plaintiff was provided amoxicillin pending a full dental exam on the next available workday. Id. at 6. Robert Krak, D.M.D., performed a dental exam on December 22, 2014, and identified an early abscess. Plaintiff's antibiotics were continued and he was scheduled for additional treatment "in next few weeks." Id. Plaintiff was seen next on January 20, 2015, and again on March 13, 2015. He refused a root canal procedure for a chronic abscess

5

on June 2, 2015, but underwent the procedure on August 26, 2015, when he complained of persistent pain. Plaintiff received follow-up dental care in September 2015. Id. at 4-6.

Plaintiff contends these medical and dental records have been fabricated, ECF No. 156, but presents no evidence in support of his assertion, beyond his own speculation based upon the reverse chronological order of medical and dental progress notes. Id. at 2.

## II. PROCEDURAL BACKGROUND

Following the adjudication of Motions to Dismiss filed by the DOC Defendants and Dr. Jin as to Plaintiff's original Complaint, ECF Nos. 49 and 57, all of Plaintiff's claims were dismissed with the exception of his Eighth Amendment claim brought at Count II against Defendants Kelly, Johnson-I, Barnhart, Schirra, Plumley and Grabowski (as Nurse I) stemming from being shackled to the wall of a dry cell and his state law claim for conversion brought at Count VII against Defendants Trout and Johnson-II.[3] ECF No. 70. Plaintiff was granted leave to file an Amended Complaint with respect to two claims: his Eighth Amendment deliberate indifference claim brought against Dr. Jin at Count IV of the Complaint and his First Amendment access to the court claims brought at Count VI against Defendants Trout and Barnhart. Plaintiff filed an Amended Complaint on December 9, 2016. ECF No. 71.

The remaining DOC Defendants and Dr. Jin filed renewed Motions to Dismiss, ECF Nos. 72 and 87, and upon disposition by the Court, ECF No. 115, the only claims remaining for adjudication are Plaintiff's Eighth Amendment cruel and unusual punishment claims brought at Count II of the Complaint against Defendants Kelly, Johnson-I, Barnhart, Grabowski, Schirra and Plumley relative to Plaintiff being handcuffed to a wall for twenty-six hours; Plaintiff's

---

[3] In addition, Defendants DOC officials John E. Wetzel, Dorina Varner, Kerri Moore, Robin M. Lewis, L.S. Kerns Barr, Robert Gilmore, Tracey Shawley, Irma Vihlidal, Captain Armstrong, Captain Mitchell, Lt. Silbaugh, Lt. Howells, Lt. A.J. Morris, and Lt. Grego were dismissed from the action. ECF No. 70.

6

Eighth Amendment deliberate indifference claim brought at Count IV against Dr. Jin relative to his alleged failure to treat Plaintiff's facial pain; and Plaintiff's state law claim for conversion brought at Count VII against Defendants Trout and Johnson-II.

Discovery is complete and the parties have filed Motions for Summary Judgment, briefs and exhibits in support and opposition thereto. ECF Nos. 133, 134, 139, 140, 142, 143, 144, 145, 147, 148, 149, 150, 152, 153, 154, 155, 156, 157, 158. As more fully explained below, the evidence adduced to date establishes that there are no genuine issues of material fact and Defendants are entitled to the entry of judgment in their favor as a matter of law.

## II.  STANDARD OF REVIEW

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

7

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex, 477 U.S. at 323–25. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Anderson v. Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). Inferences based upon speculation or conjecture, however, do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

As indicated, each party has moved for the entry of judgment as a matter of law. However, the standards under which a court grants or denies each party summary judgment do not change by virtue of cross-motions being presented. Home for Crippled Children v. Prudential Insurance Co., 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). "On cross-motions for summary judgment, the law in our Circuit is clear—the Court considers each Motion on its own merits,

8

tested against the standards of [Federal Rule of Civil Procedure 56]." U.S. Equal Employment Opportunity Comm'n v. Bob Evans Farms, LLC, ___ F. Supp.3d ___, 2017 WL 3531562, at *2 (W.D. Pa. Aug. 17, 2017) (internal citations omitted).

The Court is also mindful of Plaintiff's *pro* se status. *Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A petition prepared by a prisoner ... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997) *(overruled on other grounds)*. See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

When considering a motion for summary judgment, however, the traditional flexibility toward *pro se* pleadings does not require the Court to indulge evidentiary deficiencies. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013), citing Brooks v. Kyler, 204 F.3d 102, 108 n. 7 (3d Cir. 2000). Accordingly, because Plaintiff is a pro se litigant, this Court will consider the facts and make inferences where it is appropriate.

## III. DISCUSSION

### A. Eighth Amendment Excessive Force Claim

Plaintiff brings an Eighth Amendment claim against Defendants Kelly, Johnson-I, Barnhart, Schirra, Plumley and Grabowski, relative to Plaintiff being handcuffed to a wall for twenty-six hours. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8 (1992). "'Application of force by prison guards exceeding that which is reasonable and necessary under the circumstances' may be actionable." Young v. Martin, 801 F.3d 172, 180 (3d Cir. 2015) (alterations omitted) (quoting Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984)). When assessing claims to determine whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d at 106, quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. at 7. Moreover, as correctly noted by Plaintiff "a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." Brooks, 204 F.3d at 107, quoting Hudson, 503 U.S. at 8.

The undisputed evidence presented here reveals that following the video recorded exchange of contraband in the Visitor Room, Plaintiff's placement of the contraband in his rectal

10

area, and two black balls of marijuana rolling out of his pant leg, the Defendants placed Plaintiff in a dry cell, with one hand restrained to the wall adjacent to his bunk. Plaintiff was restrained under observation for approximately 26 hours to ensure his rectum and colon were cleared of any additional contraband and, if any passed, that it was taken out of Plaintiff's possession before he was released to the RHU. ECF No. 133-3 at 2. During this period, he was checked every two hours by medical personnel and during these checks, Plaintiff's restrained hand was switched to permit exercise and rest. In addition, medical records indicate that staff ensured adequate circulation, pulse and movement, and no edema or other injuries were noted.

Under these circumstances, a reasonable jury could not find that the Defendants used force "maliciously and sadistically for the very purpose of causing harm." Young, 801 F.3d at 180 (quoting Whitley v. Albers, 475 U.S. at 320-21). Moreover, while Plaintiff has made various allegations regarding resulting harm, he has not produced evidence of any so as to survive summary judgment. See, ECF No. 152, 153 at 3. Rather, Plaintiff complained two days after his release of numbness and pain, but was provided Tylenol. No further complaints are noted. Accordingly, the Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claim, filed on behalf of Defendants Kelly, Johnson-I, Barnhart, Schirra, Plumley and Grabowski is granted.

### B. Plaintiff's Eighth Amendment Medical Care Claim

Plaintiff also claims that Dr. Jin was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Dr. Jin moves for summary judgment on the grounds that Plaintiff failed to exhaust available administrative remedies before bringing suit

against him and, further, because Plaintiff cannot show that Dr. Jin was deliberately indifferent to his serious medical needs.[4]

The Prison Litigation Reform Act ("PLRA"), requires a prisoner filing a Section 1983 action to exhaust all administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997(e)(a). See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004). See also Nyhuis v. Reno, 204 F.3d 65, 73, (3d Cir. 2000) ("it is beyond the power of the court to excuse compliance with the exhaustion requirement"). In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). The DOC's Grievance System Policy, DC-ADM 804, sets out a three-step grievance and appeals process. First, an inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." Spruill v. Gillis, 372 F.3d at 232, 233. Second, after the initial review by a grievance officer, the inmate must file an appeal to the Facility Administrator for a second level of review. Id. at 232. Finally, the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Id.

The United States Court of Appeals for the Third Circuit has found that the PLRA's exhaustion requirement includes a procedural default component which requires more than

---

[4] Dr. Jin presents additional but unpersuasive arguments in support of summary judgment. First, Dr. Jin contends that Plaintiff has not presented sufficient evidence that he suffered a "serious medical condition" as required to present an Eighth Amendment claim. Simply, a tooth abscess accompanied by severe pain as alleged presents a "serious medical condition." See e.g. Consonery v. Pelzer, 2013 WL 593982, at *5 (W.D. Pa. Feb. 15, 2013), aff'd in part, dismissed in part, 558 F. App'x 271 (3d Cir. 2014). Second, Dr. Jin contends that in the absence of expert testimony or evidence detailing the alleged inadequacy of treatment, Plaintiff cannot maintain a claim. However, Plaintiff's claim against Dr. Jin is with regard to a complete lack of medical treatment, not the adequacy of treatment actually provided. ECF No. 71 at 4, 10, 15, 24, 25 ("Plaintiff avers that if Discovery was allowed and conducted it would clearly show defendant Jin consistent denial and refusal of medical assistance when Plaintiff was clearly suffering and in pain."). Where "common knowledge" makes Plaintiff's claim apparent, expert testimony is not required, especially where Plaintiff is not challenging the proper course of treatment, but whether treatment was provided at all. Natale v. Camden County Correctional Facility, 318 F.3d 575, 580 (3d Cir. 2003).

12

"simple" exhaustion; it requires "proper" exhaustion. Id. at 228, 230. Thus, where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted. Id. at 234; Woodford v. Ngo, 548 U.S. at 90-91 (exhaustion of administrative remedies under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules") (internal quotations and citations omitted).

Dr. Jin presents the Verification of Keri Moore, an employee assigned to the SOIGA, ECF No. 150-3, who states that she reviews all grievance appeals by inmates to the Secretary's Office, and maintains records of all grievances filed by inmates at SCI-Greene. In this capacity, she did not receive or review any grievances appeals from Plaintiff regarding Dr. Jin or his alleged failure to treat facial pain. Accordingly, Dr. Jin contends that Plaintiff has procedurally defaulted on his claim and so is precluded from obtaining review or relief in this Court pursuant to the PLRA.

In response, Plaintiff points to an initial grievance submitted to the SCI-Greene grievance coordinator, which complains that he was forced to sign a cash slip to pay for an examination by Dr. Jin, despite not receiving treatment for his facial pain. ECF No. 133-4 at 3.[5] Plaintiff states

---

[5] A legible copy of Exhibit 4c was submitted to the Court in the form of an original golden rod "Inmate Copy." In this document, Plaintiff states:

> On 12-16-14 I saw Dr. Jin concerning continuing and extreme pain that I'm having on the side of my nose around the nostril area and on the right side. This is the second time I've seen Dr. Jin concerning a medical issue in the past two (2) months and on both these occasions I was asked to sign the medical cash slip for money to be taken off my account and on both occasions Dr. Jin didn't do anything for me yet on both occasions he extracted money from my account. I'm literally being refused medical attention. I don't know if Dr. Jins actions is in retaliation for a grievance I filed concerning some vile and painful things he done to me in medical back in September and is currently under investigation or what. What I do know is that he consistently is refusing me medical treatment and is consistently taking money off my account. I seriously need medical treatment for my conditions and I want my money back that Dr. Jin keep taking.

13

that he did not receive a response to his initial grievance and, citing Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 155 (3d Cir. 2016), contends that in the absence of a response, he is excused from filing an appeal. ECF No. 156 at 3. In Robinson, the plaintiff "pursued his claim correctly at every step," including submitting his grievance to the proper prison staff member within the filing deadline, and submitting multiple follow-up requests after the institution's failure to respond. Id. at 153-54. The United States Court of Appeals for the Third Circuit held that under these circumstances, the prisoner's failure to timely appeal did not preclude judicial review, because the grievance process was rendered unavailable to him. Here, in contrast, Plaintiff does not present any evidence that he pursued a response to his grievance after it was submitted through any available inmate request process or through a follow-up grievance. Further, Plaintiff does not account for or explain his grievance record as supplied by the DOC Defendants, which shows that a grievance regarding health care was submitted on December 17, 2014, denied on January 7, 2015, and no appeal was taken, but, with regard to other grievances, Plaintiff received timely responses, and timely appealed through all required levels of review. ECF No. 144-9. The evidence of Plaintiff's appeal of grievances demonstrates his knowledge of the prison grievance process through each required step.

Certainly, failure to exhaust administrative remedies is an affirmative defense and, hence, the burden lies with party asserting it. Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP, 297 F. App. 192, 193 (3d Cir. 2008). In this instance, however, the evidence adduced establishes that a grievance procedure was available to Plaintiff, but he failed to comply with it. The Court has no discretion to excuse his failure under these circumstances.

Absent evidence of Plaintiff's procedural default, Plaintiff's claim also fails on the merits. The United States Supreme Court has held that "deliberate indifference to serious

14

medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Establishing a claim requires proving both an objective component — "a serious medical need"— and a subjective component — "acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d at 582. A plaintiff may show deliberate indifference by demonstrating that "there was objective evidence that [the] plaintiff had serious need for medical care ... and prison officials ignored that evidence" or where "necessary medical treatment is delayed for non-medical reasons." Id. (internal quotation marks omitted).

Plaintiff's only evidence in support of his deliberate indifference claim against Dr. Jin is his assertion that he received no dental care during the ten months he was confined in the RHU. However, Dr. Jin has produced not only Plaintiff's medical records, but also Plaintiff's dental records, maintained by a separate provider. These records establish that Dr. Jin examined Plaintiff for facial pain on December 16, 2017, and referred him for a dental exam, which occurred on December 22, 2014. In the interim, on December 17, 2014, the dental provider acknowledged the referral and prescribed antibiotics to treat a possible infection. ECF No. 150-2 at 2-3. Plaintiff was seen again by the dentist in January, March and June of 2015, at which time Plaintiff refused a recommended root canal procedure to treat his recurring abscess. Id. at 4-6. Plaintiff consented to the procedure in late August 2015, and underwent treatment in August and September 2015. Id. With no evidence to the contrary, and no basis to ignore the plain import of Plaintiff's dental records, Plaintiff cannot establish that Dr. Jin acted with deliberate indifference to his medical needs. Accordingly, taking the evidence presented in a light most favorable to

15

Plaintiff, no reasonable jury could find in his favor, and the Motion for Summary Judgment filed by Dr. Jin is granted.

### C. State Law Conversion Claim

Plaintiff's remaining state law claim seeks recovery of damages for property that Plaintiff claims was taken into custody by Defendants Trout and Johnson-II, but never returned. While the Court is vested with supplemental jurisdiction over Plaintiff's state law claim, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Since the claims that form the basis of this Court's jurisdiction under 42 U.S.C. § 1983 will be dismissed through the entry of summary judgment, the Court declines to exercise supplemental jurisdiction and will dismiss Plaintiff's state law conversion claim without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment filed on behalf of Defendants Kelly, Johnson-I, Barnhart, Schirra, Plumley, Grabowski, and Dr. Jin, ECF Nos. 142 and 147, are properly granted and the Motion for Summary Judgment filed on behalf of Plaintiff, ECF No. 133, is denied. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 22nd day of February, 2018, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment filed on behalf of Defendants Kelly, Johnson-I, Barnhart, Schirra, Plumley and Grabowski, ECF No. 142, is GRANTED as to Plaintiff's Eighth Amendment claim regarding his confinement in a dry cell.

16

2. The Motion for Summary Judgment filed on behalf of Defendant Dr. Jin, ECF No. 147, as to Plaintiff's Eighth Amendment medical deliberate indifference claim is GRANTED.

3. Plaintiff's Motion for Summary Judgment, ECF No. 133, is DENIED

4. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claims against Defendants Trout and Johnson-II, and said claims are dismissed without prejudice.

5. The Clerk of Court is directed to mark this CASE CLOSED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

*[signature]*

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:   All counsel of record via CM/ECF

Stanton Story
AP-3330
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370